**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

```
-------------------------------------------------------------
BLOND DRAGON, LLC                        :
A New Hampshire Corporation,             :
6 Daylily Drive                          :
Nashua, New Hampshire 03062              :
                                         :
              Plaintiff,                 :
                                         :
       vs.                               :
                                         :
MEDIT, LLC                               :
19502 Traverney Drive                    :
Gaithersburg, Maryland 20879             :
                                         :
SERVE:                                   :
       Rajesh V. Chiramel                :
       19502 Traverney Drive             :
       Gaithersburg, Maryland 20879      :
                                         :
       and                               :
                                         :
REXIM PRO, LLC                           :
19502 Traverney Drive                    :
Gaithersburg, Maryland 20879             :    Civil No
                                         :
SERVE:                                   :
       Rajesh V. Chiramel                :
       19502 Traverney Drive             :
       Gaithersburg, Maryland 20879      :
       and                               :
                                         :
RAJESH V. CHIRAMEL                       :
19502 Traverney Drive                    :
Gaithersburg, Maryland 20879             :
                                         :
SERVE:                                   :
       Rajesh V. Chiramel                :
       19502 Traverney Drive             :
       Gaithersburg, Maryland 20879      :
                                         :
       and                               :
                                         :
```

**PANJO INTERNATIONAL, INC.** : 
**359-65th Street** : 
**Brooklyn, New York 11220** : 
  : 
**SERVE:** : 
    **John Panousopoulos a/k/a** : 
    **John Panos** : 
    **359-65th Street** : 
    **Brooklyn, New York 11220** : 
  : 
    **and** : 
  : 
**JOHN PANOUSOPOULOS a/k/a** : 
**JOHN PANOS** : 
**359-65th Street** : 
**Brooklyn, New York 11220** : 
  : 
**SERVE:** : 
    **John Panousopoulos a/k/a** : 
    **John Panos** : 
    **359-65th Street** : 
    **Brooklyn, New York 11220** : 
  : 
    **Defendants.** : 
-------------------------------------------------------------

## <u>COMPLAINT</u>

Plaintiff, Blond Dragon, LLC, by and through its attorneys, Freeman & Freeman, P.C., hereby files its Complaint against the Defendants, MedIT, LLC; Rexim Pro, LLC; Rajesh V. Chiramel; Panjo International, Inc.; and John Panousopoulos, and alleges as follows:

### I. Parties

1.    Plaintiff, Blond Dragon, LLC ("Blond Dragon"), is a business entity incorporated under the laws of New Hampshire.

2.    Upon information and belief, Defendant MedIT, LLC ("MedIT") is a Maryland Limited Liability Company located in Gaithersburg, Maryland, at 19502 Traverney Drive.

3.      Upon information and belief, Defendant Rexim Pro, LLC ("Rexim") is a Maryland Limited Liability Company located in Gaithersburg, Maryland, at 19502 Traverney Drive.

4.      Upon information and belief, Defendant Rajesh V. Chiramel, is an individual and an officer of MedIT and Rexim and resides at 19502 Traverney Drive.

5.      Upon information and belief, Defendant Panjo International, Inc. is a New York company located at 359-65th Street, Brooklyn, New York 11220.

6.      Upon information and belief, Defendant John Panousopoulos a/k/a John Panos, is an individual and an officer of Panjo International and resides at 359-65th Street, Brooklyn, New York 11220.

## II. Jurisdiction

7.       Plaintiff adopts and incorporates herein by reference paragraphs one (1) through six (6) as if set forth in their entirety in this section.

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. '1332(a) (diversity of citizenship) and the amount in controversy, exclusive of interest, costs and damages for prejudgment, is in excess of Seventy-Five ($75,000.00) Thousand Dollars.

9.      Jurisdiction is proper and consistent with Maryland law and Maryland Annotated Code, Courts and Judicial Proceedings '6-103(b).

## III. Venue

10.     Plaintiff adopts and incorporates herein by reference paragraphs one (1) through nine (9) as if set forth in their entirety in this section.

11.     Venue is proper in this District pursuant to 28 U.S.C. ' 1391.

## IV. Nature of Action

12.     Plaintiff adopts and incorporates herein by reference paragraphs one (1) through eleven (11) as if set forth in their entirety in this section.

13.     This is an action for breach of contract, fraud, and civil conspiracy arising from Defendants' knowing and intentional substitution of an inferior waste plastic to fill Plaintiff's orders for scrap plastic consisting of LDPE 99% Pure 1% nylon (or less) co-extruded, Film Grade plastic, clean and clear of any foreign substances (the "LDPE Plastic").

14.     At approximately the beginning of February 2007 Plaintiff entered into negotiations with Defendants to purchase LDPE Plastic for shipment to India and/or China, where Blond Dragon had contracts to resell the LDPE Plastic. The composition of the plastic was material to the Plaintiff, as Plaintiff was reselling the plastic to recyclers in India and/or China who needed plastic consisting of the exact composition set forth above.

15.     Prior to execution of any contract with Defendants, Plaintiff requested permission to inspect Defendants' warehouse and stock of LDPE Plastic. The Defendants refused Plaintiff's request, indicating, however, that they had sufficient amounts of LDPE Plastic available to fill any orders discussed in the negotiation between Plaintiff and Defendants.

16.     Further, after some delay, Defendants provided Plaintiff with samples of LDPE Plastic indicating that the samples consisted of the same product that was being used to fill the orders.

17.     On February 28, 2007, based on Defendants assurances, Blond Dragon began to enter a series of seven (7) contracts (collectively the "Contracts") with the Defendants (five with MedIT and two with Rexim) to purchase LDPE Plastic for resale overseas. Plaintiff made it

clear in entering into the Contracts that the composition of plastic was a material issue, as only the LDPE Plastic would be of use to the Plaintiff.

18.    All seven Contracts were similarly structured and required the Defendants to deliver either approximately 40,000 pounds or 80,000 ponds of the LDPE Plastic to the port in Charleston, South Carolina and arrange to have it loaded into shipping containers (each container was to be loaded with a minimum of 40,000 lbs of the LDPE Plastic).

19.    The quantity of the product delivered was to be verified by weighing it at a weight station at or near the port and providing a copy of the Weigh Station Ticket to the Plaintiff.

20.    Moreover, Defendants were required to verify loading of the LDPE Plastic by providing Plaintiff with pictures of the LDPE Plastic loaded into the shipping containers.

21.    Defendants did provide Plaintiff with pictures of product loaded into shipping containers, which Defendants represented was the LDPE Plastic.

22.    Plaintiff entered into the first contract ("Contract I") with Defendant MedIT on February 28, 2007.  Contract I called for approximately 40,000 pounds of the LDPE Plastic to be delivered FOB to the port in Charleston, South Carolina within 14 days of a deposit by Blond Dragon.  The purchase price for the LDPE Plastic was $0.22 per pound.  Contract I is attached hereto as Exhibit No.1.

23.    On March 6, 2007, MedIT invoiced Blond Dragon pursuant to Contract I in the amount of $8,918 for the delivery of 40,540 pounds of purported LDPE Plastic to the port in South Carolina.  The invoice specifically stated that LDPE Film Bales consisting of 99% LDPE 1% nylon had been shipped.  The invoice for Contract I is attached hereto as Exhibit No.2.

24.    On March 9, 2007, Blond Dragon entered into the second contract with MedIT (Contract II) to purchase approximately 40,000 pounds of the LDPE Plastic, at $0.22 per pound.

The terms of delivery were FOB to the port in Charleston, South Carolina within 14 days of the deposit by Blond Dragon.  Contract II is attached hereto as Exhibit No.3.

25.     On March 15, 2007, MedIT invoiced Blond Dragon pursuant to Contract II in the amount of $8,905 for the delivery of 40,480 pounds of purported LDPE Plastic to the port in South Carolina.  The invoice specifically stated that LDPE Film Bales consisting of 99% LDPE 1% nylon had been shipped.  The invoice for Contract II is attached hereto as Exhibit No.4.

26.     On March 9, 2007, Blond Dragon further entered into the third contract with MedIT (Contract III) to purchase approximately 80,000 pounds of the LDPE Plastic for $0.22 per pound.  The terms of delivery were again FOB to the port in Charleston, South Carolina within 14 days of the deposit by Blond Dragon.  Contract III is attached hereto as Exhibit No.5.

27.     On March 14, 2007, MedIT invoiced Blond Dragon pursuant to Contract III in the amount of $9,627 for the delivery of 43,760 pounds of purported LDPE Plastic to the port in South Carolina.  The invoice specifically stated that LDPE Film Bales consisting of 99% LDPE 1% nylon had been shipped.  The invoice for Contract III is attached hereto as Exhibit No.6.

28.     On March 14, 2007, Blond Dragon entered into the fourth contract with MedIT (Contract IV) to purchase another approximately 80,000 pounds of the LDPE Plastic, at $0.22 per pound.  The terms of delivery were FOB to the port in Charleston, South Carolina within 14 days of the deposit by Blond Dragon.  Contract IV is attached hereto as Exhibit No.7.

29.     On April 1, 2007, MedIT invoiced Blond Dragon pursuant to Contract IV in the amount of $19,421 for the delivery of 88,280 pounds of purported LDPE Plastic to the port in South Carolina.  Again the invoice specifically indicated that LDPE Film Bales consisting of 99% LDPE 1% nylon had been shipped.  The invoice for Contract IV is attached hereto as Exhibit No.8.

30.    On March 14, 2007, Blond Dragon entered into a fifth contract with MedIT (Contract V) to purchase another approximately 80,000 pounds of the LDPE Plastic, at $0.22 per pound.  Contract V is attached hereto as Exhibit No.9.

31.    On April 2, 2007, MedIT invoiced Blond Dragon pursuant to Contract V  in the amount of $21,569 for the delivery of 93,780 pounds of  purported LDPE Plastic to the port in South Carolina.  The invoice for Contract V is attached hereto as Exhibit No.10.

32.    On March 16, 2007, Blond Dragon entered into a contract with the Rexim (Contract VI) to purchase approximately 80,000 pounds of the LDPE Plastic, at $0.23 per pound. As in the contracts with MedIT, the contract with Rexim required the delivery of LDPE 99% Pure 1% nylon (or less) co-extruded, Film Grade plastic, clean and clear of any foreign substances.  Contract VI is attached hereto as Exhibit No.11.

33.    On March 30, 2007 Blond Dragon entered into a second contract with Rexim (Contract VII) to purchase approximately 80,000 Pounds of the LDPE Plastic, at $0.23 per pound.  Contract VII is attached hereto as Exhibit No.12.

34.    On April 12, 2007, Rexim invoiced Blond Dragon pursuant to Contract VII in the amount of $19,669 for the delivery of 85,520 pounds of purported LDPE Plastic to the port in South Carolina.  The invoice for Contract V is attached hereto as Exhibit No.13.

35.    Upon information and belief, all of the Contracts (I-VII) were negotiated and/or signed on the Defendants' behalf by Rajesh V. Chiramel ("Chiramel"), who is an officer in both MedIT and Rexim.

36.    Upon information and belief, Defendants breached the Contracts with Blond Dragon, by failing to deliver the type of plastic (LDPE 99% Pure 1% nylon (or less) co-extruded, Film Grade plastic, clean and clear of any foreign substances) contracted for by Blond Dragon.

Instead of delivering the LDPE Plastic, Defendants knowingly delivered an inferior scrap and/or waste plastic containing substantial quantities of other waste plastic materials including PVDC, PVC, and Polypropylene.

37.    Upon information and belief, Chiramel conspired with John Panos and Panjo International to fill the orders under the Contracts with the inferior waste plastics containing PVDC, PVC, and Polypropylene instead of the LDPE Plastic.

38.    Upon information and belief, MedIT, Rexim, and Chiramel in participation with John Panos and Panjo International, in fact, knowingly shipped inferior waste plastic to the overseas destinations instead of the LDPE Plastic required by the Contracts.

39.    Upon information and belief, Defendants knowingly and intentionally misrepresented to the Plaintiff that the product shown in the loading pictures was LDPE Plastic when the Defendants knew that the product loaded did not meet the composition requirements set forth in the Contracts.

40.    Blond Dragon first received notice that the Defendants had shipped the inferior waste plastic containing PVDC, PVC, and Polypropylene instead of the LDPE Plastic, when the shipment was received in China on May 15, 2007.

41.    The plastic shipped by the Defendants was unusable for the purposes for which it was purchased by Plaintiff and specifically negotiated for and identified in the Contracts.

<u>**COUNT I**</u>
**Breach Of Contract - MedIT**

42.    Plaintiff adopts and incorporates herein by reference paragraphs one (1) through forty-one (41) as if set forth in their entirety in this count.

43.    The Contracts between Blond Dragon and MedIT (Contracts I-V) are valid and enforceable contracts.

44.     Pursuant to the Contracts, MedIT was obligated to deliver a certain type and quality of scrap plastic, specifically the LDPE Plastic, in the amounts set forth in each Contract. MedIT failed to deliver the type and quality of plastic set forth in the Contracts (I-V) and instead filled the orders with inferior scrap and/or waste plastic containing substantial quantities of other waste plastic materials including PVDC, PVC, and Polypropylene.

45.     The scrap plastic supplied by MedIT is unusable for the purposed for which Plaintiff contracted with MedIT.

46.     MedIT's failure to deliver the LDPE Plastic, constitutes a material breach of the Contracts I-V.

47.     As a direct and proximate cause, Plaintiff has incurred and continues to incur pecuniary loss, including damages incurred in providing substitute materials to its customers, loss of customers, and attorneys' fees and costs associated with this action and in defense of a lawsuit brought by customer of Plaintiff who have sued Plaintiff for failure to deliver LDPE Plastic.

WHEREFORE, Plaintiff demands judgment against MedIT in the amount of $200,000 paid to MedIT under the Contracts I-V, and any and all other damages, including any and all incidental and consequential damages incurred. In addition, Plaintiff claims all costs and attorneys' fees associated with MedIT's breach, the filing of this action, and the defense of actions against Plaintiff for breach of contract resulting from MedIT's breach.

## COUNT II
### Breach Of Contract – Rexim

48.     Plaintiff adopts and incorporates herein by reference paragraphs one (1) through forty-seven (47) as if set forth in their entirety in this count.

49.    The Contracts between Blond Dragon and Rexim (Contracts VI-VII) are valid and enforceable contracts.

50.    Pursuant to the Contracts, Rexim was obligated to deliver a certain type and quality of scrap plastic, specifically the LDPE Plastic, in the amounts set forth in each Contract. Rexim failed to deliver the type and quality of plastic set forth in the contract and instead filled the orders with inferior scrap and/or waste plastic containing substantial quantities of other waste plastic materials including  PVDC, PVC, and Polypropylene.

51.    The scrap plastic supplied by Rexim is unusable for the purposed for which Plaintiff contracted with Rexim.

52.    Rexim's failure to deliver the LDPE Plastic, constitutes a material breach of the Contracts VI-VII.

53.    As a result of the above mentioned fraudulent acts by the Defendant Rexim, Plaintiff has incurred pecuniary damages, including losses associated with other business ventures.

WHEREFORE, Plaintiff demands judgment against Rexim in the amount of $200,000 paid to Rexim under the Contracts (VI-VII), and any and all other damages, including any and all incidental and consequential damages incurred.   In addition Plaintiff claims all costs and attorneys' fees associated with Rexim's breach, the filing of this action, and the defense of actions against Plaintiff for breach of contract resulting from MedIT's breach.

## COUNT III
### Fraud - MedIT

54.    Plaintiff adopts and incorporates herein by reference paragraphs one (1) through fifty-three (53) as if set forth in their entirety in this count.

55.    Upon information and belief, Defendant MedIT made knowing, intentional and willful false representations of material fact to the Plaintiff regarding its ability to supply the type and quality scarp plastic the Plaintiff was seeking to purchase (*i.e.* the LDPE Plastic), with the intention of inducing the Plaintiff to enter into the Contracts with MedIT to supply scrap plastic.

56.    Defendant MedIT knew that Plaintiff would not have entered the Contracts or into any business relationship if Plaintiff had known that Defendant MedIT could not deliver the LDPE Plastic.

57.    Accordingly, upon information and belief, MedIT knowingly and intentionally misrepresented to Plaintiff that it had LDPE Plastic available in the quantities and quality required by the terms of the Contracts.

58.    Moreover, upon information and belief, MedIT knowingly and intentionally misrepresented on its invoices (attached hereto as Exhibit Nos. 2, 4, 6, 8 & 10) that it had delivered and caused to be loaded onto the shipping containers the contracted for amounts of LDPE 99% Pure 1% nylon (or less) co-extruded, Film Grade plastic, when, in fact, MedIT knew that inferior scrap and/or waste plastic containing substantial quantities of other waste plastic materials including PVDC, PVC, and Polypropylene had been delivered and loaded into the shipping containers.

59.    Upon information and belief, MedIT further provided Plaintiff with pictures that MedIT represented showed the LDPE Plastic loaded into the shipping containers when MedIT knew that the containers were in fact loaded with the inferior scrap and/or waste plastic containing substantial quantities of other waste plastics.

60.    Finally, upon information and belief, MedIT sent samples of the LDPE Plastic or arranged to have samples sent to Plaintiff and informed Plaintiff that the orders would be and/or

were being filled with the plastic that comprised the samples, while MedIT knew that the orders under the Contracts were in fact being filled with the inferior scrap and/or waste plastic, which did not meet the composition requirements of the Contract.

61.    Plaintiff had a right to and did in fact rely upon MedIT's representations in entering the Contracts.

62.    As a result of the above mentioned fraudulent acts by the MedIT, Plaintiff has incurred pecuniary damages, including, but not limited to monetary losses from the Contracts, fees, costs and expenses associated with the defense of a breach of contract action from Plaintiff's customers resulting from MedIT acts, and loss of other business opportunities.

WHEREFORE, Plaintiff demands judgment from MedIT in the amount of $200,000 in compensatory damages, and $2,000,000 in punitive damages, plus interest and the costs of this action, including reasonable attorneys' fees, the costs and fees associated with the defense of actions against Plaintiff for breach of contract, and such other relief as this Court deems just and proper.

## COUNT IV
### Fraud - Rexim

63.    Plaintiff adopts and incorporates herein by reference paragraphs one (1) through sixty-two (62) as if set forth in their entirety in this count.

64.    Upon information and belief, Defendant Rexim made knowing, intentional and willful false representations of material fact to the Plaintiff regarding its ability to supply the type and quality scarp plastic the Plaintiff was seeking to purchase (*i.e.* the LDPE Plastic), with the intention of inducing the Plaintiff to enter into the Contracts with Rexim to supply scrap plastic.

65.    Defendant Rexim knew that Plaintiff would not have entered the Contracts or into any business relationship if Plaintiff had known that Rexim could not deliver the LDPE Plastic.

66. Accordingly, upon information and belief, Rexim knowingly and intentionally misrepresented to Plaintiff that it had LDPE Plastic available in the quantities and quality required by the terms of the Contracts.

67. Moreover, upon information and belief, knowingly and intentionally misrepresented on its invoice (attached hereto as Exhibit No.13) that it had delivered and caused to be loaded onto the shipping containers the contracted for amounts of LDPE 99% Pure 1% nylon (or less) co-extruded, Film Grade plastic, clean and clear of any foreign substances, when, in fact, Rexim knew that inferior scrap and/or waste plastic containing substantial quantities of other waste plastic materials including PVDC, PVC, and Polypropylene had been delivered and loaded into the shipping containers.

68. Upon information and belief, Rexim further provided Plaintiff with pictures that Rexim represented showed the LDPE Plastic loaded into the shipping containers when Rexim knew that the containers were in fact loaded with inferior scrap and/or waste plastic containing substantial quantities of other waste plastics.

69. Finally, upon information and belief, Rexim sent samples of the LDPE Plastic or arranged to have samples sent to Plaintiff and informed Plaintiff that the orders would be and/or were being filled with the plastic that comprised the samples, while Rexim knew that the orders under the Contracts were in fact being filled with inferior scrap and/or waste plastic, which did not meet the composition requirements of the Contracts.

70. Plaintiff had a right to and did in fact rely upon Rexim's representations in entering the Contracts.

71. As a result of the above mentioned fraudulent acts by the Rexim, Plaintiff has incurred pecuniary damages, including, but not limited to monetary losses from the Contracts,

fees, costs and expenses associated with the defense of  breach of contract actions from Plaintiff's customers resulting from Rexim acts, and loss of other business opportunities.

WHEREFORE, Plaintiff demands judgment from Rexim in the amount of $200,000 in compensatory damages, and $2,000,000 in punitive damages, plus interest and the costs of this action, including reasonable attorneys' fees, the costs and fees associated with the defense of actions against Plaintiff for breach of contract, and such other relief as this Court deems just and proper.

## COUNT V
### Fraud - Rajesh V. Chiramel

72.    Plaintiff adopts and incorporates herein by reference paragraphs one (1) through seventy-one (71) as if set forth in their entirety in this count.

73.    Upon information and belief, Defendant Rajesh V. Chiramel ("Chiramel") acting personally and as an officer of MedIT and Rexim made knowing, intentional and willful false representations to the Plaintiff regarding his and/or MedIT and Rexim's (hereafter "his Companies") ability to supply the type and quality scarp plastic the Plaintiff was seeking to purchase (i.e. the LDPE Plastic), with the intention of inducing the Plaintiff to enter into the Contracts with MedIT and Rexim to supply the scrap plastic.

74.    Chiramel knew that Plaintiff would not have entered into the Contracts or into any business relationship if Plaintiff had known that he and/or his Companies could not deliver the LDPE Plastic

75.    Accordingly, upon information and belief, Chiramel knowingly and intentionally misrepresented to Plaintiff that he and/or his Companies had LDPE Plastic available in the quantities and quality required by the terms of the Contracts.

76.     Moreover, upon information and belief, Chiramel knowingly and intentionally misrepresented on his Companies' invoices (See Exhibit Nos. 2, 4, 6, 8, 10 & 13) that he/they had delivered and caused to be loaded onto the shipping containers the contracted for amounts of LDPE 99% Pure 1% nylon (or less) co-extruded, Film Grade plastic, clean and clear of any foreign substances, when, in fact, Chiramel knew that inferior scrap and/or waste plastic containing substantial quantities of other waste plastic materials including PVDC, PVC, and Polypropylene had been delivered and loaded into the shipping containers.

77.     Upon information and belief, Chiramel further provided Plaintiff with pictures that Chiramel represented showed the LDPE Plastic loaded into the shipping containers when Chiramel knew that the containers were in fact loaded with inferior scrap and/or waste plastic containing substantial quantities of other waste plastics.

78.     Finally, upon information and belief, Chiramel sent samples of the LDPE Plastic or arranged to have samples sent to Plaintiff and informed Plaintiff that the orders would be and/or were being filled with the plastic that comprised the samples, while Chiramel knew that the orders under the Contracts were in fact being filled with inferior scrap and/or waste plastic, which did not meet the composition requirements of the Contracts.

79.     Based upon Chiramel's position as General Manager of MedIT and as CEO of Rexim, Plaintiff had a right to and did in fact rely upon Chiramel's representations in entering the Contracts.

80.     As a result of the above mentioned fraudulent acts by the Chiramel, Plaintiff has incurred pecuniary damages, including, but not limited to monetary losses from the Contracts, fees, costs and expenses associated with the defense of breach of contract actions from Plaintiff's customers resulting from Chiramel acts, and loss of other business opportunities.

WHEREFORE, Plaintiff demands judgment from Chiramel in the amount of $200,000 in compensatory damages, and $2,000,000 in punitive damages, plus interest and the costs of this action, including reasonable attorneys' fees, the costs and fees associated with the defense of actions against Plaintiff for breach of contract, and such other relief as this Court deems just and proper.

**COUNT VI**
**Fraud – Panjo International**

81.    Plaintiff adopts and incorporates herein by reference paragraphs one (1) through eighty (80) as if set forth in their entirety in this count.

82.    Upon information and belief, Defendant Panjo International made knowing, intentional and willful false representations to the Plaintiff regarding its ability to supply the type and quality scarp plastic the Plaintiff was seeking to purchase (*i.e.* the LDPE Plastic), with the intention of inducing the Plaintiff to enter into the Contracts with MedIT and Rexim to supply scrap plastic.

83.    Panjo International knew that Plaintiff would not have entered into the Contracts or into any business relationship with MedIT, Rexim, and Chiramel and in turn would not have been selected by those Defendants to supply the plastic, if Plaintiff had known that Panjo International could not deliver the LDPE Plastic.

84.    Accordingly, upon information and belief, Panjo International knowingly and intentionally misrepresented to Plaintiff that Panjo International had LDPE Plastic available in the quantities and quality required by the terms of the Contracts.

85.    Upon information and belief, Panjo International further provided Plaintiff with pictures that Panjo International represented showed the LDPE Plastic loaded into the shipping

16

containers when Panjo International knew that the containers were in fact loaded with inferior scrap and/or waste plastic containing substantial quantities of other waste plastics.

86.    Finally, upon information and belief, Panjo International sent samples of LDPE Plastic directly to Plaintiff and/or to the other Defendants to forward to Plaintiff indicating that the orders would be and/or were being filled with the same plastic that comprised the samples, while it knew that the orders under the Contracts were in fact being filled with inferior scrap and/or waste plastic containing substantial quantities of other waste plastic materials including PVDC, PVC, and Polypropylene.

87.    Based upon Panjo International's position as MedIT and Rexim's supplier, Plaintiff had a right to and did in fact rely upon Panjo International's representations in entering the Contracts and continuing its dealings with the Defendants.

88.    As a result of the above mentioned fraudulent acts by the Panjo International, Plaintiff has incurred pecuniary damages, including, but not limited to monetary losses from the Contracts, fees, costs and expenses associated with the defense of  breach of contract actions from Plaintiff's customers resulting from Panjo International acts, and loss of other business opportunities.

WHEREFORE, Plaintiff demands judgment from Panjo International in the amount of $200,000 in compensatory damages, and $2,000,000 in punitive damages, plus interest and the costs of this action, including reasonable attorneys' fees, the costs and fees associated with the defense of actions against Plaintiff for breach of contract, and such other relief as this Court deems just and proper.

## COUNT VII
### Fraud - John Panos

89.    Plaintiff adopts and incorporates herein by reference paragraphs one (1) through eighty-eight (88) as if set forth in their entirety in this count.

90.    Upon information and belief, Defendant John Panos ("Panos") acting personally and as an officer of Panjo International made knowing, intentional and willful false representations to the Plaintiff regarding his and/or Panjo International's ability to supply the type and quality scarp plastic the Plaintiff was seeking to purchase (*i.e.* the LDPE Plastic), with the intention of inducing the Plaintiff to enter into the Contracts with MedIT and Rexim to supply the LDPE Plastic.

91.    Panos knew that Plaintiff would not have entered into the Contracts or into any business relationship with MedIT, Rexim and Chiramel and in turn would not have been selected by those Defendants to supply the plastic, if Plaintiff had known that he and/or Panjo International could not deliver the LDPE Plastic.

92.    Accordingly, upon information and belief, Panos knowingly and intentionally misrepresented to Plaintiff that he and/or Panjo International had LDPE Plastic available in the quantities and quality required by the terms of the Contracts.

93.    Upon information and belief, Panjo International further provided Plaintiff with pictures that Panos represented showed the LDPE Plastic loaded into the shipping containers when Panos knew that the containers were in fact loaded with inferior scrap and/or waste plastic containing substantial quantities of other waste plastics.

94.    Finally, upon information and belief, Panos sent samples of LDPE Plastic directly to Plaintiff and/or to the other Defendants to forward to Plaintiff indicating that the orders would be and/or were being filled with the same plastic that comprised the samples, while Panos knew

that the orders under the Contracts were in fact being filled with the inferior scrap and/or waste plastic containing substantial quantities of other waste plastic materials including PVDC, PVC, and Polypropylene.

95.     Based upon Panos' position as MedIT and Rexim's supplier, Plaintiff had a right to and did in fact rely upon Panos' representations in entering the Contracts and continuing its dealings with the Defendants.

96.     As a result of the above mentioned fraudulent acts by the Panos, Plaintiff has incurred pecuniary damages, including, but not limited to monetary losses from the Contracts, fees, costs and expenses associated with the defense of  breach of contract actions from Plaintiff's customers resulting from Panos acts, and loss of other business opportunities.

WHEREFORE, Plaintiff demands judgment from Panos in the amount of $200,000 in compensatory damages, and $2,000,000 in punitive damages, plus interest and the costs of this action, including reasonable attorneys' fees, the costs and fees associated with the defense of actions against Plaintiff for breach of contract, and such other relief as this Court deems just and proper.

### COUNT VIII
### CIVIL CONSPIRACY
### (all Defendants)

97.     Plaintiff adopts and incorporates herein by reference paragraphs one (1) through ninety-six (96) as if set forth in their entirety in this count.

98.     The Defendants MedIT, Rexim, Chiramel, Panjo International, and Panos ("Defendants"), all acting in concert, engaged in the above mentioned fraudulent acts and omissions to accomplish the objective of substituting inferior scrap and/or waste plastic containing substantial quantities of PVDC, PVC, and Polypropylene, for the LDPE Plastic for

the purpose of obtaining a substantial cost savings between the inferior waste plastic and the LDPE Plastic that was required by the Contracts.

99.     Defendants were all active participants in the fraudulent acts and omissions relating to the substitution of inferior waste plastic for the LDPE Plastic and had a meeting of the minds toward achieving the objective of using their control of access to the supply of plastic in the unlawful manner discussed above.

100.     The fraudulent acts and omissions complained of herein and the objective sought by the Defendants were unlawful.

101.     As a result of the above mentioned fraudulent acts and omissions by the Defendants, Plaintiff has incurred and continues to incur monetary damages, including but not limited to losses from the Contracts, costs and expenses related to a lawsuit filed against it in New Hampshire by SanSang Plastic, Inc., and cost and expenses related to the storage and eventual return of inferior and unusable plastic from China and India; all of which has been necessitated by the Defendants' fraudulent activities.

WHEREFORE, Plaintiff Blond Dragon demands judgment from all Defendants in the amount of $200,000 in compensatory damages, and $2,000,000 in punitive damages, interest, plus the costs, fees, and expenses associated with the action brought by SanSang Plastic, Inc. against Plaintiff, and the costs of this action, including reasonable attorneys' fees and such other relief as this Court deems just and proper.

Dated: September 14, 2007

Respectfully submitted,

FREEMAN & FREEMAN, P.C.


By:    /s/ Mark A. Freeman /s/
       Mark A. Freeman, Federal Bar Number 013635
       Martin L. Vedder, Federal Bar Number 015379
       One Church Street, Suite 200
       Rockville, Maryland  20850
       (301) 315-0200
       Attorneys for Plaintiff, Blond Dragon, LLC